**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
GABRIEL RAZZANO,

                          Plaintiff,

           -against-

COUNTY OF NASSAU, POLICE
COMMISSIONER LAWRENCE W.
MULVEY, SALVATORE MISTRETTA,
WILLIAM LEMIEUX, and ANTHONY
ROCCO,

                          Defendants.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
07-cv-3983 (ADS)(AKT)

**APPEARANCES:**

**La Reddola, Lester & Associates, LLP**
*Attorneys for the plaintiff*
600 Old Country Road, Suite 224
Garden City, NY 11530
           By:     Robert James La Reddola, Esq.
                   Wendy C. Pelle-Beer, Esq., of Counsel

**Nassau County Attorney's Office**
*Attorneys for the defendants*
One West Street
Mineola, NY 11501
           By:     Esther D. Miller, Deputy County Attorney
                   Karen Schmidt, Deputy County Attorney
                   Liora M. Ben-Sorek, Deputy County Attorney
                   Ralph J. Reissman, Deputy County Attorney, of Counsel

**SPATT, District Judge.**

           Gabriel Razzano, the plaintiff in this case, asserts that the defendants, all

associated with the Nassau County Police Department, violated his Fourteenth

Amendment due process rights by failing to provide him with an adequate

opportunity to recover rifles and shotguns that the defendants had confiscated from

his residence.  All parties now move for summary judgment.  The rulings of the Court follow.

## I. BACKGROUND

The Court previously decided a motion to dismiss in this case, Razzano v. County of Nassau, 599 F. Supp. 2d 345 (E.D.N.Y. 2009) ("Razzano I"), and familiarity with that decision is assumed.  Because the recitation of facts in Razzano I was based solely on the plaintiff's complaint, the Court now again relates the background in this case, now drawing from the parties' evidentiary submissions.

The plaintiff Gabriel Razzano is a fifty-six year old resident of Freeport, New York, which is in Nassau County.  He is a member of the Minuteman Civil Defense Corps, whose stated mission is to "see the borders and coastal boundaries of the United States secured against the unlawful and unauthorized entry of all individuals, contraband, and foreign military."  (Compl., ¶ 3; Minuteman Civil Defense Corpts Mission Statement, available online at <http://www.minutemanhq. com/> (visited February 18, 2011).)  He describes himself as "active in my community of Freeport on the issue of illegal immigration," and notes that he has received attention for "protest[ing] the construction of a hiring hall" in downtown Freeport.  (Affidavit of Gabriel Razzano, dated Apr. 29, 2010, ¶ 3 ("Razzano April Aff.").)

Along with protesting for stricter enforcement of the immigration laws, Razzano has also repeatedly contacted local and federal legislators relating to immigration.  One such legislator was United States Representative Carolyn McCarthy.  In the six years leading up to the events precipitating this lawsuit,

Razzano telephoned McCarthy's office approximately one hundred times, and visited the office approximately six times.

Razzano visited McCarthy's office for a seventh time on the morning of Monday, March 19, 2007, seeking to meet with Representative McCarthy on immigration issues.  The parties disagree about the details of this visit, but neither disputes that shortly after Razzano arrived at McCarthy's office, McCarthy's staff members informed Razzano that he was not a member of McCarthy's district and asked him to leave the office.  According to the defendants, Razzano was rude, frightening, and threatening to the staff members when he came to the congresswoman's office.  Not surprisingly, Razzano denies this assertion.

Whether Razzano was rude and threatening or not, he did leave McCarthy's office, and at the recommendation of McCarthy's staff members, he went directly to the Board of Elections to determine his correct Congressional district.  The Board of Elections shortly thereafter issued a certificate to Razzano indicating that he was in fact registered to vote in McCarthy's district.  This was apparently an error, but Razzano had no reason to know this at the time.  After making a brief stop elsewhere, Razzano returned to McCarthy's office that same day, with both his certificate and a video recorder in hand.

There was no one in the reception area when Razzano entered Representative McCarthy's office, so he waved to a person in the back of the office and sat down.  While Razzano had been away, a member of McCarthy's staff had called the Garden City Police regarding his visit, and the Garden City Police contacted the Nassau County Police Department Special Investigations Squad.  The

Special Investigations Squad in turn dispatched an officer to Representative McCarthy's office. So, shortly after Razzano sat down in the congresswoman's office, he was met by Nassau County Detective Alfred Samaniego, a member of the Special Investigations Squad. Samaniego asked to see Razzano's identification, and explained to Razzano that he was not one of McCarthy's constituents. According to Samaniego, Razzano "became agitated and began to raise his voice" during this encounter. (Reissman Aff., Ex. L.) Razzano denies this. All parties agree that shortly after Razzano arrived at the office, Samaniego asked Razzano to leave, and escorted him outside. The parties also agree that, as he left the office, Razzano saw Representative McCarthy at the elevator, at which point Razzano said words to the effect of "Ms. McCarthy, I've been trying to meet with you." Razzano then left the office with no response from the congresswoman.

Between Razzano's two visits to McCarthy's office on March 19, 2007, Garden City police officers discovered that Razzano owned fifteen registered handguns. The Garden City police then also contacted the Nassau County Pistol License Section, which, the next day, Tuesday, March 20, 2007, assigned two Nassau County Police Officers—the individual defendants Officer (now Sergeant) Salvatore Mistretta and Sergeant William Lemieux—to investigate whether Razzano's pistol license should be suspended and his handguns confiscated.

Lemieux and Mistretta state that they began their investigation into Razzano's fitness to possess handguns on the morning of March 20, 2007 by meeting with staff members of Representative McCarthy who had interacted with Razzano in the past. They then also spoke with Detective Samaniego, who told

them that Razzano "seemed unstable" when he met him at McCarthy's office the previous day.  (Reissman Aff., Ex. L at 5.)  The officers next proceeded to Razzano's residence.  Finding that Razzano was not home, the officers decided to visit Razzano's mother, who lives nearby.  Razzano's mother, who was home, greeted the officers and called Razzano, who agreed to meet Lemieux and Mistretta at his house within a short time.

Upon returning to Razzano's residence, the officers took a photograph of the back door to Razzano's minivan, from which hung a large rope tied into a noose.  The photograph, which has been submitted to the Court, also shows that the vehicle had bumper stickers that read "Vote for Rope" and "got rope?".  (Reissman Aff. at Ex. M.)

The officers then entered the plaintiff's home.  Although the plaintiff's motion papers suggest that he did not consent to Lemieux and Mistretta entering his home, the plaintiff's complaint suggests the contrary.  (See, e.g., Compl., ¶ 78 (stating that Razzano "allowed [the officers] to enter" his home).)  The defendants also uniformly testify that Razzano consented to their entering his house, and Razzano's sworn testimony does not contradict this.

The parties also dispute what happened after the officers entered Razzano's home.  However, before describing that dispute, the Court pauses to note a critical fact in this case.  Along with his fifteen registered handguns, Razzano also possessed nine rifles and shotguns, which, because of the length of their barrels, are referred to collectively as "longarms".  In Nassau County, there is no license

requirement for the purchase or possession of longarms.  Razzano kept these longarms in the same safe where he stored his handguns.

According to Razzano, once in his house, the officers instructed him that they were confiscating all of his guns, including his longarms.  Razzano states that he quickly and peaceably complied with this demand, in spite of his assertion that the revocation of his pistol license only legally required that he surrender his handguns.

By contrast, the officers claim that after they entered Razzano's residence, they spoke with Razzano for thirty minutes, during which time Razzano appeared "mentally unstable," and "became angry, then sad, and then started to cry". (Affidavit of Salvatore Mistretta, dated May 12, 2010, ¶ 32 ("Mistretta May Aff.").) The officers also state that during this time they saw in Razzano's home a book by David Duke entitled "Jewish Supremicism," as well as a "four-page flyer from the anti-illegal immigration organization 'Save-A-Patriot.Org'".  (Id., ¶ 31.)  Taking all of this into consideration along with the information they had gathered from their investigation, the officers state that they then decided to confiscate Razzano's handguns.  When Razzano opened his safe to produce his handguns, the officers also saw Razzano's longarms, and the officers determined at that point that they should confiscate these weapons as well.  (See id., ¶ 33.)

Whatever actually happened in Razzano's home, the parties agree that the officers confiscated all of the guns in Razzano's possession, for which they issued receipts to him.  Razzano was not arrested or charged with any crime.  A little over a month later, on April 24, 2007, the Nassau County Police informed Razzano by

6

letter that it was revoking his pistol license.  Among the grounds stated for revoking the license were six police reports, which indicated that Razzano had participated in anti-illegal immigration protests.  None of the six reports reflect any criminal activity by Razzano.

On May 2, 2007, the plaintiff, through an attorney, requested a hearing with the Nassau County Pistol License Bureau challenging the revocation of his pistol license.  Under Nassau County law, persons whose pistol licenses are revoked are entitled to such a hearing, and in Razzano's case, this hearing was scheduled for October 7, 2007.  If a licensee prevails at this hearing, his handguns are returned.  If not, his handguns remain in the possession of the Nassau County Police Department.  However, before his hearing was held, Razzano commenced the present action and also requested that his hearing be adjourned during the pendency of this case.  Although his pistol license thus remains suspended, Razzano does not challenge the revocation of his pistol license or the confiscation of his handguns in the present action.

While there is a set procedure for the return of seized handguns in Nassau County, there is no standard procedure for the return of seized longarms.  Sergeant Mistretta, who now is the commanding officer of the Pistol Licensing Section, asserts that Nassau County would have returned both Razzano's handguns *and* his longarms had he prevailed at his handgun license hearing.  However, there is no written policy to this effect, and moreover, the plaintiff objects to this remedy on the grounds that he should not be forced to have his pistol license reinstated to have his longarms returned to him.

Thus, primarily as a challenge to the seizure and retention of his longarms, the plaintiff commenced the present action on September 24, 2007.  The plaintiff's original complaint named several parties and causes of action that were dismissed in Razzano I.  As a result of that decision, the plaintiff presently has causes of action against only (1) Nassau County; (2) Nassau County Police Commissioner Lawrence W. Mulvey; (3) Nassau County Police Sergeant Salvatore Mistretta; (4) Nassau County Police Sergeant William Lemieux; and (5) Nassau County Chief of Department Anthony W. Rocco.  Against all of these defendants, the plaintiff asserts causes of action for (1) violation of his Fourteenth Amendment procedural due process rights, pursuant to 42 U.S.C. § 1983; (2) common law conversion; and (3) common law replevin.

The thrust of the plaintiff's complaint is that the due process clause of the Fourteenth Amendment requires that Nassau County provide a meaningful and timely post-deprivation hearing for the return of his longarms, and that Nassau County has failed to do so.  As discussed below, the facts alleged in the plaintiff's complaint also appear to state a Section 1983 Fourth Amendment claim for illegal search and seizure of these longarms, but the plaintiff did not actually assert this cause of action.  As for the plaintiff's pendant state law claims, these causes of action simply seek the return of his longarms.

The defendants contest all of these causes of action, including the plaintiff's unplead Fourth Amendment claim.  The parties have now completed discovery, and all have moved for summary judgment on all causes of action.  In addition, the

8

plaintiff has moved for an award of attorney's fees if he is successful on his Section 1983 cause of action.

## II. DISCUSSION

### A. Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.   In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct.

1348, 89 L. Ed. 2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).  However, the

nonmoving party cannot survive summary judgment by casting mere "metaphysical

doubt" upon the evidence produced by the moving party.  Matsushita, 475 U.S. at

586.  Summary judgment is appropriate when the moving party can show that "little

or no evidence may be found in support of the nonmoving party's case."  Gallo v.

Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations

omitted).

**B. As to the Defendants' Motions for Summary Judgment Dismissing the Plaintiff's Section 1983 Claim Against Nassau County and Police Commissioner Lawrence W. Mulvey**

Before addressing the substance of the plaintiff's causes of action, the Court

first considers the defendants' motion for summary judgment dismissing the

plaintiff's Section 1983 cause of action as against (1) Nassau County and (2) Police

Commissioner Lawrence W. Mulvey.

First, with respect to the Section 1983 claim against Nassau County, the

defendants assert that, pursuant to Monell v. New York City Dept. of Social Servs.,

436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) and its progeny, the

plaintiff's claim fails because he has not shown that he was harmed as a result of a

municipal policy or practice.  However, as discussed below, the defendants have

essentially admitted that the actions they took with respect to Razzano were the

result of departmental policy.  Thus, the Court denies the defendants' motion with

respect to Nassau County.

As for Commissioner Mulvey, the defendants assert that the plaintiff has

neither alleged facts nor offered evidence showing Mulvey's personal involvement

in the alleged deprivation of the plaintiff's rights.  See, e.g., Wright v. Smith, 21

F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to

an award of damages under § 1983. " (internal quotations omitted)).  The plaintiff

does not address this assertion in his opposition to the defendants' motion, nor does

he identify any evidence showing Commissioner Mulvey's involvement in the

alleged violations of the plaintiff's rights.

    As discussed below, the Court finds that the violation of the plaintiff's rights

was the result of municipal policy.  However, while Commissioner Mulvey is the

head of the police department that carried out this policy, there is no evidence—

aside from his position—showing that he had or should have had knowledge of this

particular police department policy.  Given this complete lack of evidence, along

with the plaintiff's decision not to address this issue in any way, the Court finds that

there are no triable issues of fact with respect to Mulvey's personal involvement in

this case.  The Court therefore dismisses the plaintiff's Section 1983 claim as

against Mulvey.

**C. As to the Plaintiff's Putative Section 1983 Fourth Amendment Cause of
    Action**

    The plaintiff has moved for summary judgment in his favor on what he

asserts is a Section 1983 cause of action for the defendants' violation of his Fourth

Amendment rights.  However, as the defendants point out, the plaintiff's complaint

plainly states three causes of action, none of which is predicated on the Fourth

Amendment.  Indeed, in moving for total summary judgment themselves, the

defendants did not initially address any Fourth Amendment claim, because none is stated in the plaintiff's complaint.  This position is particularly reasonable given the fact that, in Razzano I, there was no mention of any Fourth Amendment cause of action.

Nevertheless, the plaintiff—who has at all times been represented by counsel—urges the Court to apply the "liberal pleading rules" (Plaintiff's Reply at 12), and construe his complaint at this late stage to state a Section 1983 Fourth Amendment cause of action.  The plaintiff asserts that he has stated a cause of action based on this theory because he has alleged facts that could support such a claim.  While the relevant rule of procedure, Fed. R. Civ. P. 8(a), may be liberal, it is not as generous as the plaintiff apparently believes it to be.  No cause of action for violation of the Fourth Amendment has been stated, and summary judgment on this putative claim would be inappropriate.

However, this does not end the Court's inquiry.  Having reviewed the plaintiff's complaint and the evidence presented to the Court, it appears that the plaintiff may well have a valid Fourth Amendment cause of action.  Razzano's basic contention in support of this claim is that the defendants improperly seized his longarms without a warrant or probable cause.  The Court has some doubt about the plaintiff's ability to predicate a Fourth Amendment claim on the warrant requirement, as the evidence at least suggests that the plaintiff consented to the Nassau County Police officers entering his home and viewing his longarms.  See, e.g., Groh v. Ramirez, 540 U.S. 551, 560, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (noting the consent search exception to the warrant requirement); Minnesota

12

v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993) (discussing the plain view exception to the warrant requirement).  Nevertheless, taking the evidence in the best light for the plaintiff, Razzano appears at present to have a triable claim at least predicated on the defendants' lack of probable cause to seize his longarms.  Indeed, the defendants do not even assert that probable cause existed to seize Razzano's longarms, but rather state that "the police were not arresting plaintiff for any crime, and so did not need probable cause."  (Defs.' Opposition at 18–19.)  While there exist exceptions to the probable cause requirement for seizure of a person's property, see, e.g., Coolidge v. New Hampshire, 403 U.S. 443, 470 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) (noting the police's power, in some cases, to seize objects "dangerous in themselves"), the Fourth Amendment's probable cause protections do not cease to operate because the possessor of property is not being arrested.  Indeed, such a conclusion would afford *more* constitutional protection to an accused criminal than to a person not accused of a crime.

The defendants also assert that the Nassau County Police Department's general statutory power to "preserve the public peace, prevent crime, protect the rights of persons and property, and guard the public health" validates the seizure of the plaintiff's longarms.  (Defs.' Opposition at 8.)  While this power might provide a valid basis for the seizure of longarms from individuals in certain cases, it cannot supersede the Fourth Amendment of the United States Constitution, which requires either a showing of probable cause or a valid exception to this general rule.  Cady v. Dombrowski, 413 U.S. 433, 439, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973) ("The

ultimate standard set forth in the Fourth Amendment is reasonableness. In construing this command, there has been general agreement that except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." (internal quotations and citations omitted)).

Therefore, the Court grants the plaintiff twenty days from the date of this Order to amend his complaint to assert a Section 1983 Fourth Amendment cause of action. Should the plaintiff elect to so amend his complaint, the Court will entertain a motion from the defendants for a limited re-opening of discovery to address the plaintiff's new Fourth Amendment claim.

**D. As to the Plaintiff's Section 1983 Fourteenth Amendment Cause of Action**

The plaintiff also asserts a Section 1983 Fourteenth Amendment due process cause of action against the defendants. Unlike the plaintiff's putative Fourth Amendment claim, which addresses the legality of the defendants' initial seizure of his longarms, this cause of action addresses only the legal process that the defendants afforded him after those longarms were confiscated. Compare Fox v. Van Oosterum, 176 F.3d 342, 351 (6th Cir. 1999) ("Put another way, the Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property."); accord Mallard v. Potenza, 376 Fed. App'x 132, 133 (2d Cir. 2010) (affirming Mallard v. Potenza, No. 94-cv-223, 2007 WL 4198246, *4 (E.D.N.Y. Nov. 21, 2007)). The Fourteenth Amendment cause of action is similarly distinct from the plaintiff's state law causes of action. Those claims, for replevin and conversion, involve the plaintiff's

substantive superior title to his longarms.  By contrast, the plaintiff's Fourteenth Amendment claim asserts only that the plaintiff was not given a sufficient opportunity to challenge the defendants' holding of his longarms.

Both the plaintiff and the defendant have moved for summary judgment on the plaintiff's Fourteenth Amendment due process claim.  Unlike the plaintiff's putative Fourth Amendment claim, there are virtually no disputed facts with respect to this cause of action.  Both parties agree that the defendants confiscated Razzano's longarms, and that the Nassau County Police Department has a policy of doing so when they believe a person to be dangerous.  They also agree that Razzano demanded the return of his guns, and was informed by the Nassau County Police Department that his longarms would be returned if he either (1) had his pistol license reinstated, or (2) presented a court order directing their return.  It is the defendants' contention that this provided Razzano with sufficient process to challenge the seizure of his longarms.  Razzano asserts that it did not afford him sufficient due process.

The due process clause of the Fourteenth Amendment of the United States Constitution states, "nor shall any State deprive any person of life, liberty, or property, without due process of law."  The Court described the basic law of Fourteenth Amendment due process in Razzano I, 599 F. Supp. 2d at 353, stating:

> "[I]n evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'"  Rivera-Powell, 470 F.3d at 465 (citing Hudson v. Palmer, 468 U.S. 517, 532, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), and Parratt v. Taylor, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981)).  Where, as here, a

> plaintiff alleges a deprivation pursuant to an established state procedure, "the state can predict when it will occur and is in the position to provide a pre-deprivation hearing."  Although the County points out that it apprised the Plaintiff of his *postdeprivation* remedies, in such instances, "the availability of post-deprivation procedures will not, ipso facto, satisfy due process."  Rivera-Powell, 470 F.3d at 465 (citing Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir.1996)).  Instead, courts must look to the three-part test articulated by the Supreme Court in Mathews v. Eldridge, 424 U.S. at 334, to determine what level of process is due under the circumstances.
>
> Under the Mathews test, courts weigh: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation through the procedures used and the value of additional procedural safeguards; and (3) the government's interest in taking the challenged action. Id. at 335.

(emphasis in original).  Thus, applying this analysis to the essentially undisputed relevant facts, the Court must determine, first, whether the plaintiff's alleged erroneous deprivation of property was in fact pursuant to a government policy.  If it was, then the Court must apply the Mathews test to determine what pre- and post-deprivation remedies are due from Nassau County.

The first of these two inquiries is readily resolved.  Although the defendants have suggested that the confiscation of Razzano's longarms was not pursuant to an established state procedure, this position appears untenable.  The defendants admit that: "[t]he Nassau County Police Department has a policy of confiscating longarms from their owner in any incident that involves the threat of violence, threat to the public, in exigent circumstances, where there is the imminent threat of a use of weapons, in cases involving harassment, intimidation, threats and physical violence . . . ."  (Defs.' Rule 56.1 Stmt., ¶ 20; see also Mistretta May Aff. at ¶ 11

("when a police officer determines that a threat to the public safety exists arising out of the possession of firearms, he is authorized to remove those firearms, including both handguns and longarms.").)  This policy—as well as the defendants' continued assertion that Razzano's longarms were validly confiscated—belies any insinuation that the seizure of the longarms was the result of "random, unauthorized conduct" so as to avoid the <u>Mathews</u> test.  <u>Sullivan v. Town of Salem</u>, 805 F.2d 81, 86 (2d Cir. 1986).  The Court thus finds that there are no genuine issues of material fact with respect to whether Razzano's longarms were seized as a result of a state policy.  They were.

As implicitly recognized by the parties, the <u>Mathews</u> test then provides the heart of the Fourteenth Amendment due process analysis in this case.  According to the defendants, Razzano's due process rights under the <u>Mathews</u> test are satisfied by the existence of two state remedies: (1) the pistol license due process hearing, after which, the defendants assert, his longarms would be returned if his pistol license is reinstated, and (2) the plaintiff's ability to commence legal proceedings in state court, including an Article 78 proceeding in New York Supreme Court. Razzano maintains that neither of these procedures satisfy his Fourteenth Amendment rights under the <u>Mathews</u> test.

As a preliminary matter, the Court notes that the <u>Mathews</u> test ordinarily requires a state actor to provide pre-deprivation process, because a deprivation that results from a state policy is likely to be foreseeable by state actors, who can in turn provide a hearing before effecting the deprivation.  <u>See</u> <u>Rivera-Powell v. New York City Bd. of Elections</u>, 470 F.3d 458, 465 (2d Cir. 2006) ("when the deprivation is

pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing"). However, pre-deprivation process may not be required when, among other things, there exist "exigent circumstances necessitating very prompt action". See Spinelli v. City of New York, 579 F.3d 160, 170 (2d Cir. 2009) (internal quotations omitted). Presumably in light of this well-settled law, the plaintiff does not assert that he had a right to pre-deprivation proceedings before his longarms were seized. The Court agrees. Regardless of whether the defendants were entitled to seize and hold Razzano's longarms, the very nature of seizing guns renders it impractical to require the police to hold hearings before taking this type of deadly weapon away from an individual. Thus, in applying the Mathews test, the Court's analysis focuses solely on the adequacy of the post-deprivation remedies available to Razzano.

Before discussing the Mathews test in detail, the Court first reviews four relevant decisions that will serve as guideposts in the ensuing analysis of this case. The first three cases form a trio from the Second Circuit, addressing challenges to a New York City municipal law that governs the return of property taken from individuals at the time of their arrest. The fourth is a decision from the New York Court of Appeals concerning a forfeiture law.

The plaintiffs in the first three cases, who had property taken from them at the time of their arrest, asserted that the law governing the return of their property provided an arbitrary process for this purpose, and at times required an arrestee to pursue a civil claim against the police department to have property returned. In the

first case of the trio, <u>McClendon v. Rosetti</u>, 460 F.2d 111 (2d Cir. 1972), the court

held this law unconstitutional as applied to items that are not contraband, evidence

of crime, or fruits of crime.  In doing so, the Second Circuit stated:

> It seems plain enough that absent evidence of unlawful conduct, criminal sanctions may not be imposed, <u>Taylor v. Louisiana</u>, 370 U.S. 154, 82 S. Ct. 1188, 8 L. Ed. 2d 395 (1962); <u>Thompson v. Louisville</u>, 362 U.S. 199, 80 S. Ct. 624, 4 L. Ed. 2d 654 (1960), nor property forfeited, <u>United States v. One 1936 Model Ford etc. Coach</u>, 307 U.S. 219, 59 S. Ct. 861, 83 L. Ed. 1249 (1939), even though in the case of property forfeiture the burden of proof on the government seeking it is only by a preponderance of the evidence.

<u>Id.</u> at 115.  The court implicitly held that, under the existing system, the plaintiffs'

property was in practice being forfeited "absent evidence of unlawful conduct".  <u>Id.</u>

The second and third cases in this trio, <u>Butler v. Castro</u>, 896 F.2d 698 (2d

Cir. 1990) and <u>Alexandre v. Cortes</u>, 140 F.3d 406 (2d Cir. 1998), evaluated aspects

of the procedure adopted by New York City in the wake of <u>McClendon</u>.  After

issuing its opinion in <u>McClendon</u>, the circuit court remanded the case to the district

court for an order setting forth constitutionally valid procedures for the city to

follow in returning property to arrestees.  The resulting order required that, upon

timely demand for non-contraband confiscated property, the city must either (1)

return the property, or (2) initiate forfeiture proceedings.  <u>Butler</u>, 896 F.2d at 70, n.

1.  The court in <u>Butler</u> further held that the Fourteenth Amendment required

sufficient notice of this policy, and that a lack of notice "makes the availability of

replevin, or any other secondary New York remedy, irrelevant".  <u>Id.</u> at 703.

<u>Alexandre</u> echoed this finding, and also noted again that "'the existence of

independent state relief does not defeat a Section 1983 claim where the deprivation

complained of results from the operation of established state procedures.'" 140

F.3d at 411 (quoting Butler, 896 F.2d at 700).

In the fourth case, County of Nassau v. Canavan, 1 N.Y.3d 134, 802 N.E.2d

616, 770 N.Y.S.2d 277 (2003), the New York Court of Appeals addressed a due

process challenge to a Nassau County statute pursuant to which the County was

seeking the civil forfeiture of vehicles driven by people when they were arrested for

drunk driving.  Applying the Mathews test to this law, the court held that "[a]

balancing of [the Mathews] factors mandates that post-seizure hearings be routinely

provided" when a vehicle is retained by the police after a drunk driving arrest.  Id.

at 142.  The court noted that state law remedies challenging Nassau County's

possession could take many months or years to resolve, and because a person's

possessory interest in a car is significant, the Court ruled that a prompt post-

deprivation hearing was necessary if Nassau County sought to retain an individual's

vehicle.  Id.  In reaching this conclusion, the court also recognized that the

importance of such a hearing to the person whose property is seized is not affected

by the facial merit or lack of merit of an individual's challenge to the seizure of

their property.  Id. at 143 ("the importance of defendants' possessory interest [is

not] diminished by the likelihood that they might lose and the County might

eventually prevail in forfeiture proceedings").

With these cases as a backdrop, the Court will apply the Mathews factors to

this case.  The first prong of the test is easily applied.  It requires the Court to

consider the private interest affected by state action, and here, all parties agree that

Razzano has a property interest in his longarms.  Thus, this factor favors Razzano.

20

The second prong, which is more challenging to apply, requires the Court to consider "the risk of an erroneous deprivation of such interest through the [present] procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The third prong, also more challenging to apply, requires that the Court weigh "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id.

Here, the parties agree that the present procedures available to Razzano to obtain the return of his longarms are twofold: (1) he may seek a hearing to have his pistol license reinstated, or (2) he may commence a state court action pursuant to Article 78, New York's omnibus mandamus statute. Applying the Mathews test, the Court first addresses the value of these two present procedural safeguards, and then discusses the probable value of additional, proposed safeguards.

Considering first the pistol license hearing, the Court concludes that this due process remedy carries a significant risk of erroneous deprivation. By requiring individuals to pursue this remedy, the defendants are essentially requiring that the plaintiff re-obtain a valid pistol license before his longarms will be returned. However, no license is required to purchase or own longarms, and in fact, the defendants openly assert that "despite the fact that his pistol license is presently revoked . . . , plaintiff is free at any time to purchase any longarm of his choosing at any [licensed] gunsmith or firearms dealer." (Mistretta May Aff., ¶ 10.) Thus, the plaintiff's lack of a pistol license does not provide a basis for the defendants'

21

retention of his longarms.  In addition, requiring that a person seeking the return of his longarms meet the same qualifications as are required to obtain a pistol license is an improperly arbitrary standard.  Obviously, this is not the standard required for possession of new longarms for *even the plaintiff himself*.  Thus, the pistol license hearing sets an improperly high standard for the return of longarms, and thus risks perpetuating an erroneous deprivation of property.

The Court similarly concludes that an Article 78 proceeding also raises a considerable risk of erroneous deprivation.  Unlike the pistol license hearing, there is little concern that in the Article 78 proceeding a plaintiff who is legally entitled to the return of confiscated longarms will ultimately be denied a proper remedy.  Rather, the concern over erroneous deprivation with respect to the Article 78 proceeding is primarily temporal.  Analogous to the discussion in Canavan, 1 N.Y.3d at 142, a state case resolving the ownership of confiscated longarms is likely to take a substantial amount of time.  Further, placing the burden of going forward on the person whose property was taken is even more onerous, as it requires that such person give up not only time, but also money to initiate a lawsuit and retain an attorney.  In this regard, the Court cites with approval the statement of one of the judges cited in McClendon, who noted, "'It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury.'"  McClendon, 460 F.2d at 113, n.4 (quoting Gonzalez v. Leuci, 120 (85) N.Y.L.J., Nov. 1, 1948, at 993, col. 4, quoted by Judge Bryan in United States v. Herzfeld, 271 F. Supp. 185, 189 (S.D.N.Y. 1967)).  In addition, the Court is persuaded by the Canavan court's

admonition that there is a risk of wrongful deprivation in requiring a lengthy process to return property even where the person whose property was taken does not appear to have a strong case. Canavan, 1 N.Y.3d at 143 ("The right to be heard, however, does not depend upon an advance showing that one will surely prevail at the hearing" (internal quotations omitted)). Thus, in the Court's view, and Article 78 proceeding also presents a significant risk of erroneous deprivation.

With respect to the third Mathews factor as applied to both the pistol license hearing and an Article 78 proceeding, it is true that the government has a substantial public safety interest in keeping guns—including longarms—from a dangerous or threatening person. However, as the defendants concede, a person needs no license to possess longarms in Nassau County. Thus, to the extent that a person whose longarms are seized can readily purchase and possess new longarms, Nassau County can only have a limited public safety interest in retaining that person's confiscated longarms. Here, no party has obtained a protective order (or any other order) against Razzano that would prevent him from purchasing or possessing new longarms. Thus, the state's public safety interest in keeping Razzano's old longarms appears limited.

In arguing to the contrary, the defendants appear to conflate Nassau County's interest in initially seizing longarms with its interest in retaining the longarms. (See Defs.' Opp. at 30 (discussing the third Mathews factor and quoting Officer Lemieux as stating that his assessment of the situation on March 19, 2007 led him to believe that it was prudent to confiscate Razzano's longarms).) Although the Court does not presently render an opinion on whether the seizure of

23

Razzano's longarms was justified or constitutional, it is obvious that, as a general matter, Nassau County has a critical interest in taking guns out of the hands of dangerous and threatening individuals.  However, once a person whose longarms are taken has the opportunity to legally obtain and possess new longarms, the retention of that individual's old longarms does not greatly protect the public from potential harm.  It follows that the state's interest in retaining those longarms is similarly diminished.

Having reviewed the present procedural protections available to the plaintiff, the Court now evaluates the proposed alternative procedural safeguards. Here, the plaintiff primarily urges that the additional procedural safeguard to which he is entitled is a prompt due process hearing following the seizure of his longarms. To assess whether this is a reasonable additional requirement, the Mathews test requires the Court to consider both (1) the probable value of this safeguard and (2) its cost to the government.

With respect to the former factor, the Court believes that a post-deprivation hearing would have significant value in preventing erroneous deprivation.  First, to the extent that the police seize longarms that do not belong to the person from whom they are confiscated, a prompt hearing will allow this to be quickly resolved. See Canavan, 1 N.Y.3d at 142–43.  More importantly, such a hearing would provide the owner of confiscated longarms a timely and inexpensive forum to challenge the government's holding of his property.  Police are charged with the critical duty of protecting the public, and it is undeniable that even the best intentioned officers can err in making the on-the-spot judgments required in

24

carrying out this duty.  Timely correction of these mistakes is valuable.  Likewise, for many gun owners—including, apparently, Razzano—longarms may have important sentimental value, and the prompt return of these weapons if wrongly possessed by the state is an important government obligation.  Moreover, the right to bear arms is enshrined in the Second Amendment of the United States Constitution, and although this right is by no means unlimited, ownership of guns by individuals legally entitled to those guns is a basic right.  A prompt due process hearing is likely to limit the unfair curtailment of this right.

As for cost, there is no evidence that requiring this type of hearing would be overly burdensome.  For individuals whose longarms are confiscated along with handguns, Nassau County could combine the hearings for the reinstatement of the pistol license and the return of the longarms.  To be sure, the hearing officer at such a combined hearing would have to apply a different standard for the return of the longarms, but Nassau County might nevertheless save public funds by having a single hearing officer perform those two functions.  With respect to confiscations of longarms not concurrent with the revocation of a pistol license, there is no indication that the number or extent of due process hearings necessary would unfairly burden Nassau County.

Although not advocated by the plaintiff, the Court also derives from the McClendon trio an additional due process remedy that will provide substantial protection to individuals whose longarms are seized.  This is the requirement that, if Nassau County seeks to maintain possession of longarms after it prevails at a due process hearing, it must initiate a legal action to validate its possession of that

property.  See Butler, 896 F.2d at 701, n.1 (describing the requirement that the New York City Property Clerk initiate an action to maintain possession of non-contraband property that it refuses to return to arrestees upon timely demand).  By requiring Nassau County to initiate a legal action to maintain possession of seized longarms, the burden of proving the state's right to hold a private person's property is appropriately placed on the government.  Presumably, the action that Nassau County would initiate to maintain possession of the longarms would be for forfeiture, or for a protective order barring the owner from possessing longarms.  However, the Court does not limit Nassau County to these legal theories.  In the Court's view, this safeguard will provide significant additional protection without incurring unreasonable cost.

Nevertheless, also consistent with the McClendon trio, the Court notes that Nassau County is not compelled to either (a) hold a due process hearing or (b) commence a legal action, when seized longarms are (1) the fruit of a crime, (2) an instrument of crime, (3) evidence of a crime, (4) contraband, or (5) barred by court order from being possessed by the person from whom they were confiscated.  See, e.g., McClendon, 460 F.2d at 116 (noting similar exceptions to due process requirements).

Thus, having weighed the three Mathews factors, the Court finds that persons whose longarms are seized by Nassau County are entitled to a prompt post-deprivation hearing, to be held as follows:

- First, the post-deprivation hearing must be held before a neutral decision-maker.

- Second, consistent with the Second Circuit's rulings in the McClendon trio, the right to a prompt post-deprivation hearing only applies to seized longarms that are not (1) the fruit of a crime, (2) an instrument of crime, (3) evidence of a crime, (4) contraband, or (5) barred by court order from being possessed by the person from whom they were confiscated.

- Third, at the hearing, Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action— presumably forfeiture or a cause of action seeking an order of protection, although the Court does not limit Nassau County to these theories—to maintain possession of the seized longarms.

- Fourth, if the person deprived of longarms prevails at the hearing, the longarms must be returned, barring an order to the contrary from a court to whom that finding is appealed.  If, by contrast, Nassau County prevails at the hearing, Nassau County must timely commence a proceeding by which it seeks to maintain possession of the longarms in question.

As Razzano was not offered this type of hearing, Nassau County violated his Fourteenth Amendment due process rights.  In reaching this conclusion, the Court is aware that the defendants rely primarily on the Second Circuit's decision in New

York State Nat. Organization for Women v. Pataki, 261 F.3d 156 (2d Cir. 2001) ("N.Y. NOW") in support of their contention that Article 78 provides Razzano with sufficient process.  In the Court's view, that case is inapposite.  Unlike this case, the additional procedural safeguards available to the parties in the N.Y. NOW case would have been much more expensive and onerous than requiring the kind of post-deprivation hearing suggested here by the plaintiff.  Meanwhile, unlike the present plaintiff, the plaintiffs in N.Y. NOW had a great deal of control over whether her constitutionally-protected interests were prejudiced in the first place.  See id. at 166–67.  In the Court's view, the N.Y. NOW case offers little guidance here.

Having determined that the plaintiff's Fourteenth Amendment due process rights were violated, the Court finds that the appropriate remedy for this violation is to order the defendants to provide the required process, as well as to pay damages, if incurred, for their delay in doing so.  Thus, if Nassau County elects not to return Razzano's longarms to him, the Court directs the defendant Nassau County to hold a post-deprivation hearing regarding the plaintiff's longarms within thirty days of the date of this Order.  As for damages—if any in addition to nominal damages—the Court respectfully refers this case to United States Magistrate Judge A. Kathleen Tomlinson for an inquest.

**E. As to the Plaintiff's Request for Attorney's Fees**

With respect to the plaintiff's request for attorney's fees, the Court now denies the plaintiff's motion without prejudice to renew upon the resolution of all of the plaintiff's Section 1983 causes of action.  If the plaintiff elects not to amend his complaint to assert a Section 1983 Fourth Amendment cause of action, he may

renew his motion for attorney's fees upon the completion of the inquest for damages relating to his Fourteenth Amendment claim.

**F. As to the Plaintiff's Pendant State Law Causes of Action**

In addition to his federal claim, the plaintiff has asserted against all of the defendants state law causes of action for conversion and replevin.  The defendants moved for summary judgment on these causes of action solely on grounds that the Court should not exercise supplemental jurisdiction over them.  The Court declines to dismiss these causes of action on that ground.  The plaintiff also moved for summary judgment on these causes of action, asserting that there are no triable issues of fact with respect to these claims.  Having reviewed the record in this case, the Court finds that there are triable issues of fact with respect to these causes of action.  The Court therefore denies the plaintiff's motion for summary judgment with respect to his causes of action for replevin and conversion.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for summary judgment is granted with respect to the plaintiff's Section 1983 cause of action against the defendant Police Commissioner Mulvey, and that cause of action is dismissed as to Mulvey; and it is further

**ORDERED** that the defendants' motion for summary judgment is denied in all other respects; and it is further

**ORDERED** that the plaintiff's motion for summary judgment on his putative Section 1983 Fourth Amendment claim is denied, and the plaintiff is

granted twenty days from the date of this Order to amend his complaint to state a Section 1983 cause of action for violation of the Fourth Amendment; and it is further

**ORDERED** that the plaintiff's motion for summary judgment on his Section 1983 Fourteenth Amendment claim is granted with respect to all defendants except Commissioner Mulvey, and the defendant Nassau County is directed to hold a post-deprivation hearing consistent with this Order within thirty days of the date **of this Order**; and it is further

**ORDERED** that this case is respectfully referred to United States Magistrate Judge A. Kathleen Tomlinson for an inquest as to damages for the violation of the plaintiff's Fourteenth Amendment rights; and it is further

**ORDERED** that the plaintiff's motion for attorney's fees is denied without prejudice; and it is further

[Remainder of page intentionally left blank.]

30

**ORDERED** that the caption of this case is amended to read as follows:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
GABRIEL RAZZANO,

                      Plaintiff,

               -against-

COUNTY OF NASSAU, SALVATORE
MISTRETTA, WILLIAM LEMIEUX, and
ANTHONY ROCCO,

                  Defendants.
-------------------------------------------------------X

**SO ORDERED.**

Dated: Central Islip, New York
February 28, 2011

                                      /s/ Arthur D. Spatt
                                ARTHUR D. SPATT
                      United States District Judge